1

2

3

4

5

6                     **IN THE UNITED STATES DISTRICT COURT**
                      **FOR THE DISTRICT OF OREGON**
7                              **PORTLAND DIVISION**

8

9   KAMIEL L. FOSKEY,                    )
                                         )
10               Plaintiff,              )    No. 03:10-CV-06084-HU
                                         )
11        v.                             )
                                         )
12  MICHAEL J. ASTRUE,                   )  **FINDINGS AND RECOMMENDATION**
    Commissioner of Social Security,     )
13                                       )
                 Defendant.              )
14  ──────────────────────────────────  )

15

16  Drew L. Johnson
    Kathryn Tassinari
17  Drew L. Johnson, P.C.
    1700 Valley River Drive
18  Eugene, OR 97401

19       Attorneys for Plaintiff

20
    Dwight C. Holton
21  United States Attorney
    Adrian L. Brown
22  Assistant United States Attorney
    1000 S.W. Third Avenue, Suite 600
23  Portland, OR 97204-2904

24  Richard A. Morris
    Special Assistant United States Attorney
25  Office of General Counsel
    Social Security Administration
26  701 5th Avenue, Suite 2900 M/S 221A
    Seattle, WA 98104-7075
27
         Attorneys for Defendant
28

    1 - FINDINGS & RECOMMENDATION

1  HUBEL, Magistrate Judge:

2      The plaintiff Kamiel L. Foskey[1] brings this action for

3  judicial review of a decision by the defendant Michael J. Astrue,

4  Commissioner of Social Security (the "Commissioner"), not to reopen

5  the denial of Foskey's September 15, 2000, application for Child's

6  Insurance Benefits ("CIB").  In response to Foskey's opening brief

7  in the case, Dkt. #14, the Commissioner has filed a motion to

8  dismiss the case for lack of subject matter jurisdiction, or

9  alternatively, should the court determine that it does have

10 jurisdiction, for a decision on the merits that the Commissioner's

11 denial of reopening did not violate Foskey's constitutional right

12 to due process.  Dkt. #18; *see* Dkt. #19, supporting memorandum.

13 Foskey has filed a response to the motion to dismiss.  Dkt. #20.

14      The court held a brief hearing on the Commissioner's motion on

15 July 14, 2011.  Subsequently, with leave of court, Foskey filed a

16 supplemental brief, Dkt. #23, and the Commissioner filed a

17 supplemental response, Dkt. #24.

18      Foskey currently is 43 years old.  He has minimal work

19 history, none of which amounted to substantial gainful activity.

20 Unlike most administrative records in Social Security appeals, the

21 record in this case does not contain the claimant's complete

22

23      [1]The administrative record contains numerous documents listing
   the claimant as "Kurtiss Foskey" and "Kurtis Foskey," and even
24 containing the signature of "Kurtis Foskey."  *See, e.g.*, A.R. 59,
   98, 99, 122.  The Social Security number in the record for "Kurtis
25 Foskey" is the same as the SSN for "Kamiel Laurice Foskey," and the
   determination letters in the file are addressed to "Kamiel Laurice
26 Foskey."  The court is confident from a review of the record that
   all references in the record to "Kurtiss," "Kurtis," and "Kamiel"
27 Foskey are to the same individual, who is the named plaintiff in
   this case.
28

2 - FINDINGS & RECOMMENDATION

medical history.   There are several psychological evaluations dating from 1987 through 2002 (*see* A.R. 129-170), and brief medical records substantiating the fact that Foskey "was involved in a significant accident as a youth resulting in significant head trauma."   (A.R. 172)   He suffers ongoing physical and mental symptoms from the accident, and the Commissioner has found him to be disabled as of July 9, 1987, when he was 19 years old.   (A.R. 10)   His disability is based on a severe personality disorder "with features of anxiety," and his impairment meets the criteria of Listing 12.08.   *Id.*   Foskey's request for judicial review concerns only the Commissioner's decision not to reopen his January 2000 CIB claim.

Consideration of the Commissioner's motion to dismiss will be facilitated by a recitation of the somewhat complex procedural history of Foskey's path through the maze of programs administered by the Social Security Administration.

### *PROCEDURAL HISTORY*

11/87     Foskey completed an Activities of Daily Living report (A.R. 93-98), and a Disability Report (A.R. 99-106), apparently for the state agency (*see* A.R. 107, Case Management Assessment Guide dated 11/27/87; and Vocational Report, A.R. 115-20, completed on Social Security forms).   Nothing in the record references any application for DI benefits filed by Foskey at this time, so the purpose for which these forms were completed or an agency assessment was undertaken is unclear.

3 - FINDINGS & RECOMMENDATION

| | | |
|---|---|---|
| 1 | 10/16/92 | Foskey applied for Supplemental Security Income ("SSI") |
| 2 | | benefits under Title XVI of the Social Security Act, 42 |
| 3 | | U.S.C. § 1381 *et seq.* (A.R. 45) |
| 4 | 11/15/92 | Foskey applied for Disability Insurance ("DI") benefits |
| 5 | | under Title II of the Act. *Id.* |
| 6 | Unknown | Sometime after 11/15/92, the Commissioner approved |
| 7 | | Foskey's SSI and DI applications, with a disability onset |
| 8 | | date of 09/24/91. *Id.* Foskey began receiving both DI |
| 9 | | and SSI benefits "with initial entitlement beginning |
| 10 | | March 1992." (Dkt. #24, p. 2) |
| 11 | Unknown | According to the Commissioner, Foskey's SSI benefits |
| 12 | | ended at some point "due to income higher than allowed |
| 13 | | (not related to disability)." (Dkt. #19, p. 2) Foskey |
| 14 | | is continuing to receive a monthly DI benefit of $441.00. |
| 15 | 09/15/00 | Foskey filed an application for Child's Disability |
| 16 | | Benefits ("CDB") as the survivor of his mother Yulonda |
| 17 | | Evans, who died in August 2000. It appears that Foskey |
| 18 | | alleged a disability onset date of May 1, 1973. (*See* |
| 19 | | A.R. 9, 17, 18; Dkt. #14, p. 2; Dkt. #19, p. 3) |
| 20 | 02/01 | Foskey's application for CDB was denied at the initial |
| 21 | | level. (A.R. 18) Foskey did not appeal.[2] (Dkt. #14, |
| 22 | | p. 2; Dkt. #19, p. 3) |
| 23 | / / / | |
| 24 | / / / | |
| 25 | / / / | |
| 26 | | |
| 27 | | |

[2]As discussed later in this opinion, Foskey claims he never received notice of the denial of his 2000 CDB application.

4 - FINDINGS & RECOMMENDATION

| | | |
|---|---|---|
| 1 | 10/25/05 | Foskey protectively filed[3] a second application for CDB, |
| 2 | | this time alleging a disability onset date of October 1, |
| 3 | | 1992. (A.R. 9, 18, 45, 91-92) |
| 4 | 11/15/05 | Foskey's second CDB application was denied at the initial |
| 5 | | level.  (A.R. 9, 18; Dkt. #14, p. 2; Dkt. #19, p. 3) |
| 6 | 01/04/08 | Foskey protectively filed a third application for CDB, |
| 7 | | alleging a disability onset date of May 1, 1973.  (*See* |
| 8 | | A.R. 42) |
| 9 | 02/11/08 | Foskey's third CDB application was denied.  (A.R. 47-49) |
| 10 | 02/19/08 | Foskey requested reconsideration of his third CDB claim. |
| 11 | | (A.R. 50-51) |
| 12 | 02/29/08 | Foskey's request for reconsideration of his third CDB |
| 13 | | application was denied on the basis that his "application |
| 14 | | concern[ed] the same issues which were decided when an |
| 15 | | earlier claim was denied."  (A.R. 52; *see* A.R. 52-54) |
| 16 | 04/23/08 | Foskey requested an ALJ hearing on his third CDB |
| 17 | | application.  (A.R. 55) |
| 18 | 05/22/08 | ALJ Marilyn S. Mauer issued an Order of Dismissal of |
| 19 | | Foskey's request for hearing on the basis of *res* |
| 20 | | *judicata*, noting Foskey's second and third CDB applica- |
| 21 | | tions were based on the same facts and issues, and |
| 22 | | therefore the denial of his second CDB claim remained |
| 23 | | "final and binding."  (A.R. 42-43) |
| 24 | / / / | |
| 25 | | |
| 26 | | |

[3]The decisions of the Appeals Council reference a filing date of 10/25/05, while the agency-generated claim form is dated 11/08/05.  Thus, the 10/25/05 date must have been a protective filing date.

1   07/19/08   Foskey sent a letter to the Appeals Council, requesting
2              review of the denial of his third CDB claim.   In the
3              letter, he stated he had never received the denials of
4              his first and second CDB claims, and the only denial he
5              had ever received was the denial of his third CDB claim.
6              He stated all mailings related to his first CDB claim had
7              been mailed to the wrong address, a house formerly
8              belonging to his mother that "had been sold by the time
9              [he] supposedly received [the] denial [of his first CDB
10             claim]."   (A.R. 59)   He further stated he had been
11             attempting to obtain a copy of the denial of his second
12             CDB claim for "over two years," but the Agency had been
13             unable to "find the denial they sent in 2005."   *Id.*
14             Foskey stated he had been "disabled since 1974 as the
15             result of a severe head injury," and he claimed the
16             Agency had "had [him] misdiagnosed in their files since
17             [he] first started receiving SSI in 1992."   *Id.*
18  09/11/08   The Appeals Council vacated the dismissal of Foskey's
19             third CDB claim and remanded the case to the ALJ for
20             further proceedings.   The Appeals Council noted it had
21             been "unable to locate the evidence from the prior
22             applications for Child's Insurance Benefits filed on
23             October 25, 2005 and September 15, 2000, respectively."
24             (A.R. 45)   However, the Appeals Council had "associated
25             the evidence from a claim for [DI] benefits filed
26             November 15, 1992 and an application for [SSI] benefits
27             filed October 16, 1992."   *Id.*   Noting Foskey had been
28             "approved for disability as of September 24, 1991, the

6 - FINDINGS & RECOMMENDATION

alleged onset date," the Appeals Council found that "*res judicata* dismissal of the [third CDB claim] [was] inappropriate because there [was] no evidence that the prior determinations were made based on the same evidentiary facts as now [were] present in this case." *Id.* The Appeals Council noted Foskey's 1992 claims had been approved based on a finding that his "mental impairments met the severity of Listing 12.08 (personality disorders)." *Id.* They further noted Foskey had engaged in "some work activity" after he attained the age of 22, on May 12, 1990. *Id.* The Appeals Council directed the ALJ, upon remand, to do the following:

> [A]ssociate the new evidence and conduct a substantive hearing on the issue of child's insurance benefits (disability). Clarify the alleged onset date. Evaluate [Foskey's] work during the period at issue, which includes episodes of work as a fast food worker and as a janitor in a theater. Identify periods of substantial gainful activity, if any. If warranted and available, the [ALJ] will obtain evidence from a medical expert to clarify the nature and severity of [Foskey's] mental conditions during the period at issue prior to September 24, 1991. Rule,

/ / /

/ / /

| | |
|---|---|
| 1 | as appropriate, at each step of the |
| 2 | sequential evaluation process (20 CFR |
| 3 | 404.1520). |
| 4 | *Id.* |
| 5 | 01/23/09 Foskey obtained counsel to represent him.  Prior to this |
| 6 | time, he had been acting *pro se.* |
| 7 | 06/11/09 The ALJ held a hearing on Foskey's third CDB claim. |
| 8 | Foskey appeared at the hearing with his attorney.  Foskey |
| 9 | testified briefly at the hearing, and medical expert |
| 10 | Dr. John Crossen also testified.  The ALJ noted that she |
| 11 | had been "directed to get the testimony of a medical |
| 12 | expert to consider any information that was available |
| 13 | about [Foskey's] entitlement to benefits between the |
| 14 | alleged onset date of May 1, 1973 and September 24, |
| 15 | 1991." (A.R. 186)  In that regard, Dr. Crossen testified |
| 16 | that in his opinion, Foskey met the disability criteria |
| 17 | for Listing 12.08 (personality disorders).  The earliest |
| 18 | date he could pinpoint for the diagnosis was July 9, |
| 19 | 1987, when Foskey underwent a psychological evaluation. |
| 20 | (A.R. 189) |
| 21 | 10/27/09 The ALJ issued her decision, finding Foskey had not |
| 22 | engaged in substantial gainful activity since July 9, |
| 23 | 1987, "the established onset date." (A.R. 36)  She found |
| 24 | the record contained no evidence that Foskey was disabled |
| 25 | prior to that date.  *Id.*  The ALJ found Foskey to have an |
| 26 | impairment of Listing-level severity, as follows: |
| 27 | [H]e has a deeply ingrained, maladaptive |
| 28 | pattern[] of behavior associated with |

8 - FINDINGS & RECOMMENDATION

1        pathologically inappropriate suspicious-

2        ness, oddities of thought, perception,

3        speech, and behavior, as well as intense

4        and unstable interpersonal relationships

5        and impulsive damaging behavior. . . .

6        [H]is impairment has caused moderate

7        restriction in activities of daily

8        living, marked difficulties in maintain-

9        ing social functioning, marked diffi-

10        culties in maintaining concentration,

11        persistence or pace, and no episodes of

12        decompensation, each of extended dura-

13        tion.

14        (A.R. 37)

15  11/04/09  Foskey requested review by the Appeals Council, stating:

16        "My applications for benefits from 9/00 and 11/05 should

17        be re-opened because I was not accorded the due process

18        rights allowed to me under the U.S. Constitution when

19        these were denied.  The ALJ with regard to the present

20        decision failed to even discuss my request for re-opening

21        made at Hearing on 6/11/09."  (A.R. 16; *see* A.R. 193,

22        where the ALJ and Foskey's attorney agree that no

23        additional evidence was needed "regarding the re-opening

24        of prior applications")

25  02/03/10  The Appeals Council issued its decision, adopting the

26        ALJ's findings and conclusions regarding Foskey's

27        disability as of July 9, 1987.  The Appeals Council

28        reopened the 11/15/05 decision on Foskey's 10/25/05

9 - FINDINGS & RECOMMENDATION

1  application "[i]n accordance with 20 CFR 404.988(b)."[4]

2  (A.R. 9)   However, because the 02/01 determination of

3  Foskey's 09/15/00 application "was issued over four years

4  prior to January 4, 2008," the Appeals Council found no

5  basis upon which to reopen the application under the

6  criteria set forth in 20 C.F.R. § 404.988(b).   *Id.*   The

7  Appeals Council noted: "In accordance with 20 CFR

8  404.903(1)[5], denial of the request for reopening of the

9  September 15, 2000 application is not subject to judicial

10  review." *Id.*   The Appeals Council's decision overruled

11  the 2005 denial of benefits, resulting in Foskey's

12  entitlement to CDB "[b]ased on the applications filed on

13  October 25, 2005 and January 2, 2008.[6]"   (A.R. 11)

14

15

---

16  [4]"A determination . . . may be reopened . . . [w]ithin four
17  years of the date of the notice of the initial determination if we
   find good cause, as defined in § 404.989, to reopen the case[.]"
18  20 C.F.R. § 404.988(b).   Section 404.989 provides that good cause
   includes the furnishing of new and material evidence; a clerical
19  error in computing or recomputing benefits; or when the evidence of
   record "clearly shows on its face that an error was made."   20
20  C.F.R. § 404.989.   A case will not be reopened "if the only reason
   for reopening is a change of legal interpretation or administrative
21  ruling upon which the determination or decision was made."   *Id.*

22
   [5]"Administrative actions that are not initial determinations
23  may be reviewed by [the Agency], but . . . they are not subject to
   judicial review.   These actions include, but are not limited to, an
24  action . . . [d]enying your request to reopen a determination or a
   decision[.]"   20 C.F.R. § 404.903(l).
25
   [6]The January 2, 2008, date appears to be a typographical
26  error. At the beginning of the decision, the Appeals Council noted
   the date of Foskey's application to be January 4, 2008.   (A.R. 9)
27  Similarly, the ALJ indicated Foskey "protectively filed" his
28  application on January 4, 2008.   (A.R. 42)

10 - FINDINGS & RECOMMENDATION

|    |          |                                                                      |
|----|----------|----------------------------------------------------------------------|
| 1  |          | Foskey currently receives monthly benefits of $656.00 on             |
| 2  |          | his 2008 and 2005 CDB applications.  (Dkt. #24, p. 2)                 |
| 3  | 04/06/10 | Foskey filed a Complaint in this court to challenge the              |
| 4  |          | Agency's decision not to reopen his 2000 application.                |
| 5  |          | (*See* Dkt. #2)   In his Complaint, Foskey claims the               |
| 6  |          | Commissioner's refusal to reopen his 2000 application               |
| 7  |          | "violates [Foskey's] right to due process under the                 |
| 8  |          | United States Constitution."  *Id.*, ¶ 2.                           |
| 9  | 09/01/10 | The Commissioner filed his Answer, denying any violation            |
| 10 |          | of Foskey's due process rights, and denying that the                |
| 11 |          | court has jurisdiction, whether under 42 U.S.C. § 405(g)            |
| 12 |          | or "any other basis."  (Dkt. #10, ¶¶ II & IV)                       |
| 13 | 11/2/10  | Foskey filed his opening brief on the merits.  (Dkt. #14)           |
| 14 | 03/02/11 | In response to Foskey's opening brief, the Commissioner             |
| 15 |          | filed his motion to dismiss and a supporting brief.                 |
| 16 |          | (Dkt. #18 & #19)  He stated his intention that the motion           |
| 17 |          | and supporting brief "also serve as his response to                 |
| 18 |          | [Foskey's] Brief [on the merits]."  (Dkt. #18, p. 2)                |
| 19 | 03/16/11 | Foskey filed his response to the Commissioner's motion to           |
| 20 |          | dismiss.  (Dkt. #20)                                                 |
| 21 | 07/22/11 | Foskey filed a supplemental brief.  (Dkt. #23)                      |
| 22 | 08/01/11 | The Commissioner filed a response to Foskey's supple-               |
| 23 |          | mental brief.  (Dkt. #24)                                            |
| 24 |          |                                                                      |

### DISCUSSION

The Social Security Act authorizes judicial review of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party[.]"  42 U.S.C. § 405(g).  The Act

11 - FINDINGS & RECOMMENDATION

1   itself provides that this is the exclusive basis for the court's

2   jurisdiction to review such decisions.  *See* 42 U.S.C. § 405(h) ("No

3   . . . decision of the Commissioner of Social Security shall be

4   reviewed by any person, tribunal, or governmental agency except as

5   herein provided."); *Udd v. Massanari*, 245 F.3d 1096, 1098-99 (9th

6   Cir. 2001) ("A decision not to reopen a prior, final benefits

7   decision is discretionary and ordinarily does not constitute a

8   final decision; therefore, it is not subject to judicial review.")

9   (citing *Califano v. Sanders*, 430 U.S. 99, 107-09, 97 S. Ct. 980,

10  985-86, 51 L. Ed. 2d 192 (1977)).

11      The *Udd* court noted that this rule is subject to an exception

12  when the claimant raises "any colorable constitutional claim of due

13  process violation that implicates a due process right either to a

14  meaningful opportunity to be heard or to seek reconsideration of an

15  adverse benefits determination."  *Udd*, 245 F.3d at 1099 (citing

16  *Califano*, 430 U.S. at 109, 97 S. Ct. at 986; *Evans v. Chater*, 110

17  F.3d 1480, 1483 (9th Cir. 1997)).  A claimant may raise a colorable

18  constitutional claim by way of "[a] challenge that is not 'wholly

19  insubstantial, immaterial, or frivolous[.]'"  *Id.* (quoting

20  *Boettcher v. Sec'y of Health & Human Serv.*, 759 F.2d 719, 722 (9th

21  Cir. 1985)).

22      In Foskey's July 19, 2008, letter appealing the ALJ's order

23  dismissing his request for hearing on his third CDB claim, Foskey,

24  at that time acting *pro se*, stated he had never received the

25  denials of his first and second CDB claims.  (A.R. 59)  He stated

26  he had been "disabled since 1974 as the result of a severe head

27  injury," and according to him, the Agency had been unable to locate

28  a copy of the denial of his second CDB claim.  *Id.*  In his

12 - FINDINGS & RECOMMENDATION

1  November 4, 2009, appeal, after he had obtained counsel to
2  represent him, he again requested reopening of his 2000 and 2005
3  applications, stating he "was not accorded the due process rights
4  allowed to [him] under the U.S. Constitution when these were
5  denied." (A.R. 16)

6      The Commissioner argues Foskey's claim, first raised in 2008,
7  that he never received notice of the denial of his first two CDB
8  claims, does not establish a colorable constitutional claim that he
9  was denied due process. With regard to Foskey's 2000 claim, the
10  Commissioner argues Foskey has "offered no explanation why he did
11  not pursue the issue of nonreceipt of a notice or a decision for
12  over seven years." Dkt. #19, p. 7. In response, Foskey asserts
13  that he suffered from a mental impairment that prevented him from
14  taking appropriate action when he did not receive notice that his
15  claim had been denied. Foskey asserts that if a claimant can
16  establish good cause for the delay in requesting review, a
17  colorable constitutional claim can be raised at any time,
18  "'regardless of how much time has passed since the prior
19  administrative action[.]'" Dkt. #20, p. 2 (quoting SSR 91-5p, 1991
20  WL 208067, at *2).

21      The Social Security Ruling cited by Foskey clarifies the
22  Agency's "policy on establishing good cause for missing the
23  deadline to request review." *Id.*, at *1. Specifically, the Agency
24  policy is to give "proper consideration . . . to a claimant who
25  presents evidence that mental incapacity may have prevented him or
26  her from understanding the review process." *Id.*, at *2. If a
27  *pro se* claimant can show that mental incapacity prevented him from
28  making a timely request for review of "an adverse determination,

13 - FINDINGS & RECOMMENDATION

1  decision, dismissal, or review by a Federal district court," then

2  the Agency "will determine whether or not good cause exists for

3  extending the time to request review."  *Id.*  The SSR explains the

4  criteria for establishing that the time period to request review

5  should be extended, as follows:

6            The claimant will have established mental
            incapacity for the purpose of establishing
7            good cause when the evidence establishes that
            he or she lacked the mental capacity to under-
8            stand the procedures for requesting review.

9            In determining whether a claimant lacked the
            mental capacity to understand the procedures
10           for requesting review, the adjudicator must
            consider the following factors as they existed
11           at the time of the prior administrative
            action:
12
            -    inability to read or write;
13           -    lack of facility with the English lan-
                 guage;
14           -    limited education;
            -    any mental or physical condition which
15                limits the claimant's ability to do
                 things for him/herself.
16
            If the claimant is unrepresented and has one
17           of the factors listed above, the adjudicator
            will assist the claimant in obtaining any
18           relevant evidence.  The decision as to what
            constitutes mental incapacity must be based on
19           all the pertinent facts in a particular case.
            The adjudicator will resolve any reasonable
20           doubt in favor of the claimant.

21 *Id.*

22     Although the record indicates Foskey's "composite intelligence

23 score places him in the superior range of intellectual functioning,

24 his abilities are highly discrepant."  (A.R. 137)  He has marked

25 difficulties with attention and concentration due to "a thought

26 disturbance" (A.R. 137), and "significant difficulty in situations

27 requiring relaxed, somewhat automatic attention[.]"  (A.R. 136)  He

28 is likely to experience "severe concentrational difficulties" in

14 - FINDINGS & RECOMMENDATION

1   unstructured situations.  *Id.*  The ALJ found that Foskey's mental

2   impairments have met the Listing level of severity since July 9,

3   1987.  (A.R. 37)

4       The *Udd* court held, "It is axiomatic that due process requires

5   that a claimant receive meaningful notice and an opportunity to be

6   heard before his claim for disability benefits may be denied."

7   *Udd*, 245 F.3d at 1099 (citing *Mathews v. Eldridge*, 424 U.S. 319,

8   333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976)).  Here, however,

9   the ALJ failed to address the issue of whether Foskey received

10  "meaningful notice and an opportunity to be heard" with regard to

11  his 2000 and 2005 claims.  The Appeals Council declined to reopen

12  Foskey's 2000 claim on procedural grounds.  Thus, no one on behalf

13  of the Agency has addressed Foskey's claim that he never received

14  notice that his 2000 claim was denied - an assertion that is

15  unrebutted by any evidence of record.  The Agency has been unable

16  to locate its own records with regard to the 2000 denial.  In

17  addition, even if he had received notice of the denial, the record

18  indicates he did not possess the mental capacity to seek meaningful

19  review.[7]

20      The court finds, based on the unrebutted evidence, that Foskey

21  never received notice that his 2000 claim had been denied,

22

23

24      [7]The Commissioner also argues Foskey has failed to "explain
    why he filed a new claim in 2005 if the September 2000 claim was
25  still pending or unresolved."  Dkt. #19, p. 7.  Foskey responds
    that filing a new application in 2005 was "understandable" when he
26  had not received notice of a ruling on the 2000 application, and
    "knowing to seek reopening of the 2000 application requires some
27  knowledge of the law and procedure on the issue."  Dkt. #20, p. 2.
    The court finds the Commissioner's argument to be unavailing under
28  these circumstances.

15 - FINDINGS & RECOMMENDATION

1   resulting in a denial of due process.  Thus, Foskey has raised a

2   colorable constitutional claim that constitutes an exception to the

3   general rule that the Commissioner's decision not to reopen a prior

4   claim is not subject to judicial review.  Further, the court finds

5   that even if he had received notice of the denial, Foskey lacked

6   the mental capacity to understand, and act in accordance with, the

7   appropriate procedures for requesting timely review of that

8   decision.  Accordingly, I find that the court has jurisdiction to

9   consider Foskey's claim.  I further find the evidence of record

10  establishes that his due process rights were violated when he was

11  not provided with meaningful notice that his 2000 claim had been

12  denied.

13      Ordinarily, when the court determines that a due process

14  violation requires the reopening of an application for benefits,

15  the case is remanded to the Commissioner for a ruling on the merits

16  of the claimant's disability claim for the period in question.  *See*

17  *Udd*, 245 F.3d at 1101 (citing *Stieberger v. Apfel*, 1998 WL 556156,

18  at *11-12 (S.D.N.Y. 1998) (noting the Commissioner is obligated to

19  give claimant "the benefit of all reasonable doubts"; reversing

20  refusal to reopen because Commissioner failed to do so)).  Here,

21  however, the Commissioner has already made the determination that

22  Foskey became disabled as of July 1987.  This determination was

23  made in connection with Foskey's third CDB application, which

24  alleged a disability onset date of May 1, 1973 - the same alleged

25  onset date listed in Foskey's 2000 application.  (*Compare* A.R. 9 &

26  18 *with* A.R. 42)  "There is therefore no need for further adminis-

27  trative adjudication beyond the calculation of benefits[.]"  *Udd*,

28  245 F.3d at 1102.  The Ninth Circuit has made it clear that "'where

16 - FINDINGS & RECOMMENDATION

1  the record has been developed fully and further administrative

2  proceedings would serve no useful purpose, the district court

3  should remand for an immediate award of benefits.'" *Strauss v.*

4  *Comm'r*, 635 F.3d 1135, 1138 (9th Cir. 2011) (quoting *Benecke v.*

5  *Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)).

6      Thus, the court having found Foskey's due process rights were

7  violated, the appropriate remedy is remand to the Commissioner with

8  instructions to reopen Foskey's CDB 2000 claim, and to calculate

9  and award appropriate retroactive benefits.[8]

10

11                          ***CONCLUSION***

12      I recommend denial of the Commissioner's motion to dismiss. I

13  further recommend reversal of the Appeals Council's refusal to

14  reopen Foskey's 2000 CDB claim, and remand with instructions to the

15  Commissioner to reopen the 2000 claim, and to calculate and award

16  retroactive benefits pursuant to the regulations.

17  / / /

18  / / /

19  / / /

20

21      [8]The Commissioner explains that if Foskey's 2000 application
22  is reopened, he will be entitled to retroactive CDB from
    September 15, 1999 (i.e., twelve months prior to his September 15,
23  2000, application date), through September 2004 (i.e., one month
    prior to his existing CDB entitlement; *see* 20 C.F.R.
24  § 404.621(a)(1)).  Foskey's existing DI benefits of $441.00 per
    month, and his existing CDB benefits of $656.00 per month, will
25  continue. *See* Dkt. #24, pp. 23-24.
26      Foskey agrees his retroactive benefits would begin in
    September 1999, but according to the Commissioner, Foskey's counsel
27  made an error in calculating the exact time period for which Foskey
    would receive retroactive CDB benefits. *Compare* Dkt. #23, pp. 2-3
28  *with* Dkt. #24, pp. 2-3.

17 - FINDINGS & RECOMMENDATION

1        ***SCHEDULING ORDER***

2        These  Findings  and  Recommendation  will  be  referred  to  a

3  district judge.  Objections, if any, are due **September 30, 2011.**

4  If no objections are filed, then the Findings and Recommendation

5  will go under advisement on that date.  If objections are filed,

6  then a response is due by **October 18, 2011.**  When the response is

7  due  or  filed,  whichever  date  is  earlier,  the  Findings  and

8  Recommendation will go under advisement.

9        IT IS SO ORDERED.

10                       Dated this 12th day of September, 2011.

11

12                       /s/ Dennis J. Hubel

13                       _____
                         Dennis James Hubel
14                       Unites States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18 - FINDINGS & RECOMMENDATION