**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION**

KAMIEL L. FOSKEY,                        )
                                         )
              Plaintiff,                 )      No. 03:10-CV-06084-HU
                                         )
       v.                                )
                                         )
MICHAEL J. ASTRUE,                       )   **FINDINGS AND RECOMMENDATION**
Commissioner of Social Security,         )
                                         )
              Defendant.                 )
_____  )


Drew L. Johnson
Kathryn Tassinari
Drew L. Johnson, P.C.
1700 Valley River Drive
Eugene, OR 97401

       Attorneys for Plaintiff


Dwight C. Holton
United States Attorney
Adrian L. Brown
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

Richard A. Morris
Special Assistant United States Attorney
Office of General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

       Attorneys for Defendant


1 - FINDINGS & RECOMMENDATION

HUBEL, Magistrate Judge:

The plaintiff Kamiel L. Foskey[1] brings this action for judicial review of a decision by the defendant Michael J. Astrue, Commissioner of Social Security (the "Commissioner"), not to reopen the denial of Foskey's September 15, 2000, application for Child's Insurance Benefits ("CIB"). In response to Foskey's opening brief in the case, Dkt. #14, the Commissioner has filed a motion to dismiss the case for lack of subject matter jurisdiction, or alternatively, should the court determine that it does have jurisdiction, for a decision on the merits that the Commissioner's denial of reopening did not violate Foskey's constitutional right to due process. Dkt. #18; *see* Dkt. #19, supporting memorandum. Foskey has filed a response to the motion to dismiss. Dkt. #20.

The court held a brief hearing on the Commissioner's motion on July 14, 2011. Subsequently, with leave of court, Foskey filed a supplemental brief, Dkt. #23, and the Commissioner filed a supplemental response, Dkt. #24.

Foskey currently is 43 years old. He has minimal work history, none of which amounted to substantial gainful activity. Unlike most administrative records in Social Security appeals, the record in this case does not contain the claimant's complete

---

[1]The administrative record contains numerous documents listing the claimant as "Kurtiss Foskey" and "Kurtis Foskey," and even containing the signature of "Kurtis Foskey." *See, e.g.*, A.R. 59, 98, 99, 122. The Social Security number in the record for "Kurtis Foskey" is the same as the SSN for "Kamiel Laurice Foskey," and the determination letters in the file are addressed to "Kamiel Laurice Foskey." The court is confident from a review of the record that all references in the record to "Kurtiss," "Kurtis," and "Kamiel" Foskey are to the same individual, who is the named plaintiff in this case.

2 - FINDINGS & RECOMMENDATION

medical history.   There are several psychological evaluations dating from 1987 through 2002 (*see* A.R. 129-170), and brief medical records substantiating the fact that Foskey "was involved in a significant accident as a youth resulting in significant head trauma."   (A.R. 172)   He suffers ongoing physical and mental symptoms from the accident, and the Commissioner has found him to be disabled as of July 9, 1987, when he was 19 years old.   (A.R. 10)  His disability is based on a severe personality disorder "with features of anxiety," and his impairment meets the criteria of Listing 12.08.  *Id.*  Foskey's request for judicial review concerns only the Commissioner's decision not to reopen his January 2000 CIB claim.

Consideration of the Commissioner's motion to dismiss will be facilitated by a recitation of the somewhat complex procedural history of Foskey's path through the maze of programs administered by the Social Security Administration.

### PROCEDURAL HISTORY

11/87     Foskey completed an Activities of Daily Living report (A.R. 93-98), and a Disability Report (A.R. 99-106), apparently for the state agency (*see* A.R. 107, Case Management Assessment Guide dated 11/27/87; and Vocational Report, A.R. 115-20, completed on Social Security forms).  Nothing in the record references any application for DI benefits filed by Foskey at this time, so the purpose for which these forms were completed or an agency assessment was undertaken is unclear.

| | | |
|---|---|---|
| 1 | 10/16/92 | Foskey applied for Supplemental Security Income ("SSI") |
| 2 | | benefits under Title XVI of the Social Security Act, 42 |
| 3 | | U.S.C. § 1381 *et seq.* (A.R. 45) |
| 4 | 11/15/92 | Foskey applied for Disability Insurance ("DI") benefits |
| 5 | | under Title II of the Act. *Id.* |
| 6 | Unknown | Sometime after 11/15/92, the Commissioner approved |
| 7 | | Foskey's SSI and DI applications, with a disability onset |
| 8 | | date of 09/24/91. *Id.* Foskey began receiving both DI |
| 9 | | and SSI benefits "with initial entitlement beginning |
| 10 | | March 1992." (Dkt. #24, p. 2) |
| 11 | Unknown | According to the Commissioner, Foskey's SSI benefits |
| 12 | | ended at some point "due to income higher than allowed |
| 13 | | (not related to disability)." (Dkt. #19, p. 2) Foskey |
| 14 | | is continuing to receive a monthly DI benefit of $441.00. |
| 15 | 09/15/00 | Foskey filed an application for Child's Disability |
| 16 | | Benefits ("CDB") as the survivor of his mother Yulonda |
| 17 | | Evans, who died in August 2000. It appears that Foskey |
| 18 | | alleged a disability onset date of May 1, 1973. (*See* |
| 19 | | A.R. 9, 17, 18; Dkt. #14, p. 2; Dkt. #19, p. 3) |
| 20 | 02/01 | Foskey's application for CDB was denied at the initial |
| 21 | | level. (A.R. 18) Foskey did not appeal.[2] (Dkt. #14, |
| 22 | | p. 2; Dkt. #19, p. 3) |
| 23 | / / / | |
| 24 | / / / | |
| 25 | / / / | |
| 26 | | |
| 27 | | |
| 28 | | [2]As discussed later in this opinion, Foskey claims he never received notice of the denial of his 2000 CDB application. |

| | |
|---|---|
| 10/25/05 | Foskey protectively filed[3] a second application for CDB, this time alleging a disability onset date of October 1, 1992. (A.R. 9, 18, 45, 91-92) |
| 11/15/05 | Foskey's second CDB application was denied at the initial level. (A.R. 9, 18; Dkt. #14, p. 2; Dkt. #19, p. 3) |
| 01/04/08 | Foskey protectively filed a third application for CDB, alleging a disability onset date of May 1, 1973. (*See* A.R. 42) |
| 02/11/08 | Foskey's third CDB application was denied. (A.R. 47-49) |
| 02/19/08 | Foskey requested reconsideration of his third CDB claim. (A.R. 50-51) |
| 02/29/08 | Foskey's request for reconsideration of his third CDB application was denied on the basis that his "application concern[ed] the same issues which were decided when an earlier claim was denied." (A.R. 52; *see* A.R. 52-54) |
| 04/23/08 | Foskey requested an ALJ hearing on his third CDB application. (A.R. 55) |
| 05/22/08 | ALJ Marilyn S. Mauer issued an Order of Dismissal of Foskey's request for hearing on the basis of *res judicata*, noting Foskey's second and third CDB applications were based on the same facts and issues, and therefore the denial of his second CDB claim remained "final and binding." (A.R. 42-43) |

/ / /

---

[3]The decisions of the Appeals Council reference a filing date of 10/25/05, while the agency-generated claim form is dated 11/08/05. Thus, the 10/25/05 date must have been a protective filing date.

5 - FINDINGS & RECOMMENDATION

07/19/08   Foskey sent a letter to the Appeals Council, requesting review of the denial of his third CDB claim.   In the letter, he stated he had never received the denials of his first and second CDB claims, and the only denial he had ever received was the denial of his third CDB claim. He stated all mailings related to his first CDB claim had been mailed to the wrong address, a house formerly belonging to his mother that "had been sold by the time [he] supposedly received [the] denial [of his first CDB claim]." (A.R. 59)   He further stated he had been attempting to obtain a copy of the denial of his second CDB claim for "over two years," but the Agency had been unable to "find the denial they sent in 2005."   *Id.* Foskey stated he had been "disabled since 1974 as the result of a severe head injury," and he claimed the Agency had "had [him] misdiagnosed in their files since [he] first started receiving SSI in 1992."   *Id.*

09/11/08   The Appeals Council vacated the dismissal of Foskey's third CDB claim and remanded the case to the ALJ for further proceedings.   The Appeals Council noted it had been "unable to locate the evidence from the prior applications for Child's Insurance Benefits filed on October 25, 2005 and September 15, 2000, respectively." (A.R. 45)   However, the Appeals Council had "associated the evidence from a claim for [DI] benefits filed November 15, 1992 and an application for [SSI] benefits filed October 16, 1992."   *Id.*   Noting Foskey had been "approved for disability as of September 24, 1991, the

6 - FINDINGS & RECOMMENDATION

1    alleged onset date," the Appeals Council found that "*res*
2    *judicata* dismissal of the [third CDB claim] [was]
3    inappropriate because there [was] no evidence that the
4    prior determinations were made based on the same
5    evidentiary facts as now [were] present in this case."
6    *Id.* The Appeals Council noted Foskey's 1992 claims had
7    been approved based on a finding that his "mental
8    impairments met the severity of Listing 12.08
9    (personality disorders)." *Id.* They further noted Foskey
10   had engaged in "some work activity" after he attained the
11   age of 22, on May 12, 1990. *Id.* The Appeals Council
12   directed the ALJ, upon remand, to do the following:

13          [A]ssociate the new evidence and conduct
14          a substantive hearing on the issue of
15          child's insurance benefits (disability).
16          Clarify the alleged onset date. Evaluate
17          [Foskey's] work during the period at
18          issue, which includes episodes of work as
19          a fast food worker and as a janitor in a
20          theater. Identify periods of substantial
21          gainful activity, if any. If warranted
22          and available, the [ALJ] will obtain
23          evidence from a medical expert to clarify
24          the nature and severity of [Foskey's]
25          mental conditions during the period at
26          issue prior to September 24, 1991. Rule,

27   / / /
28   / / /

7 - FINDINGS & RECOMMENDATION

1  │ as appropriate, at each step of the
2  │ sequential evaluation process (20 CFR
3  │ 404.1520).
4  │ *Id.*
5  │ 01/23/09 Foskey obtained counsel to represent him. Prior to this
6  │ time, he had been acting *pro se*.
7  │ 06/11/09 The ALJ held a hearing on Foskey's third CDB claim.
8  │ Foskey appeared at the hearing with his attorney. Foskey
9  │ testified briefly at the hearing, and medical expert
10 │ Dr. John Crossen also testified. The ALJ noted that she
11 │ had been "directed to get the testimony of a medical
12 │ expert to consider any information that was available
13 │ about [Foskey's] entitlement to benefits between the
14 │ alleged onset date of May 1, 1973 and September 24,
15 │ 1991." (A.R. 186) In that regard, Dr. Crossen testified
16 │ that in his opinion, Foskey met the disability criteria
17 │ for Listing 12.08 (personality disorders). The earliest
18 │ date he could pinpoint for the diagnosis was July 9,
19 │ 1987, when Foskey underwent a psychological evaluation.
20 │ (A.R. 189)
21 │ 10/27/09 The ALJ issued her decision, finding Foskey had not
22 │ engaged in substantial gainful activity since July 9,
23 │ 1987, "the established onset date." (A.R. 36) She found
24 │ the record contained no evidence that Foskey was disabled
25 │ prior to that date. *Id.* The ALJ found Foskey to have an
26 │ impairment of Listing-level severity, as follows:
27 │ [H]e has a deeply ingrained, maladaptive
28 │ pattern[] of behavior associated with

8 - FINDINGS & RECOMMENDATION

1          pathologically inappropriate suspicious-
2          ness, oddities of thought, perception,
3          speech, and behavior, as well as intense
4          and unstable interpersonal relationships
5          and impulsive damaging behavior. . . .
6          [H]is impairment has caused moderate
7          restriction in activities of daily
8          living, marked difficulties in maintain-
9          ing social functioning, marked diffi-
10         culties in maintaining concentration,
11         persistence or pace, and no episodes of
12         decompensation, each of extended dura-
13         tion.
14     (A.R. 37)
15  11/04/09  Foskey requested review by the Appeals Council, stating:
16         "My applications for benefits from 9/00 and 11/05 should
17         be re-opened because I was not accorded the due process
18         rights allowed to me under the U.S. Constitution when
19         these were denied.  The ALJ with regard to the present
20         decision failed to even discuss my request for re-opening
21         made at Hearing on 6/11/09."  (A.R. 16; *see* A.R. 193,
22         where the ALJ and Foskey's attorney agree that no
23         additional evidence was needed "regarding the re-opening
24         of prior applications")
25  02/03/10  The Appeals Council issued its decision, adopting the
26         ALJ's findings and conclusions regarding Foskey's
27         disability as of July 9, 1987.  The Appeals Council
28         reopened the 11/15/05 decision on Foskey's 10/25/05

9 - FINDINGS & RECOMMENDATION

application "[i]n accordance with 20 CFR 404.988(b)."[4] (A.R. 9)   However, because the 02/01 determination of Foskey's 09/15/00 application "was issued over four years prior to January 4, 2008," the Appeals Council found no basis upon which to reopen the application under the criteria set forth in 20 C.F.R. § 404.988(b). *Id.* The Appeals Council noted: "In accordance with 20 CFR 404.903(1)[5], denial of the request for reopening of the September 15, 2000 application is not subject to judicial review." *Id.* The Appeals Council's decision overruled the 2005 denial of benefits, resulting in Foskey's entitlement to CDB "[b]ased on the applications filed on October 25, 2005 and January 2, 2008.[6]" (A.R. 11)

---

[4]"A determination . . . may be reopened . . . [w]ithin four years of the date of the notice of the initial determination if we find good cause, as defined in § 404.989, to reopen the case[.]" 20 C.F.R. § 404.988(b). Section 404.989 provides that good cause includes the furnishing of new and material evidence; a clerical error in computing or recomputing benefits; or when the evidence of record "clearly shows on its face that an error was made." 20 C.F.R. § 404.989. A case will not be reopened "if the only reason for reopening is a change of legal interpretation or administrative ruling upon which the determination or decision was made." *Id.*

[5]"Administrative actions that are not initial determinations may be reviewed by [the Agency], but . . . they are not subject to judicial review. These actions include, but are not limited to, an action . . . [d]enying your request to reopen a determination or a decision[.]" 20 C.F.R. § 404.903(1).

[6]The January 2, 2008, date appears to be a typographical error. At the beginning of the decision, the Appeals Council noted the date of Foskey's application to be January 4, 2008. (A.R. 9) Similarly, the ALJ indicated Foskey "protectively filed" his application on January 4, 2008. (A.R. 42)

10 - FINDINGS & RECOMMENDATION

| | |
|---|---|
| | Foskey currently receives monthly benefits of $656.00 on his 2008 and 2005 CDB applications. (Dkt. #24, p. 2) |
| 04/06/10 | Foskey filed a Complaint in this court to challenge the Agency's decision not to reopen his 2000 application. (*See* Dkt. #2) In his Complaint, Foskey claims the Commissioner's refusal to reopen his 2000 application "violates [Foskey's] right to due process under the United States Constitution." *Id.*, ¶ 2. |
| 09/01/10 | The Commissioner filed his Answer, denying any violation of Foskey's due process rights, and denying that the court has jurisdiction, whether under 42 U.S.C. § 405(g) or "any other basis." (Dkt. #10, ¶¶ II & IV) |
| 11/2/10 | Foskey filed his opening brief on the merits. (Dkt. #14) |
| 03/02/11 | In response to Foskey's opening brief, the Commissioner filed his motion to dismiss and a supporting brief. (Dkt. #18 & #19) He stated his intention that the motion and supporting brief "also serve as his response to [Foskey's] Brief [on the merits]." (Dkt. #18, p. 2) |
| 03/16/11 | Foskey filed his response to the Commissioner's motion to dismiss. (Dkt. #20) |
| 07/22/11 | Foskey filed a supplemental brief. (Dkt. #23) |
| 08/01/11 | The Commissioner filed a response to Foskey's supplemental brief. (Dkt. #24) |

### *DISCUSSION*

The Social Security Act authorizes judicial review of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party[.]" 42 U.S.C. § 405(g). The Act

11 - FINDINGS & RECOMMENDATION

itself provides that this is the exclusive basis for the court's jurisdiction to review such decisions. *See* 42 U.S.C. § 405(h) ("No . . . decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided."); *Udd v. Massanari*, 245 F.3d 1096, 1098-99 (9th Cir. 2001) ("A decision not to reopen a prior, final benefits decision is discretionary and ordinarily does not constitute a final decision; therefore, it is not subject to judicial review.") (citing *Califano v. Sanders*, 430 U.S. 99, 107-09, 97 S. Ct. 980, 985-86, 51 L. Ed. 2d 192 (1977)).

The *Udd* court noted that this rule is subject to an exception when the claimant raises "any colorable constitutional claim of due process violation that implicates a due process right either to a meaningful opportunity to be heard or to seek reconsideration of an adverse benefits determination." *Udd*, 245 F.3d at 1099 (citing *Califano*, 430 U.S. at 109, 97 S. Ct. at 986; *Evans v. Chater*, 110 F.3d 1480, 1483 (9th Cir. 1997)). A claimant may raise a colorable constitutional claim by way of "[a] challenge that is not 'wholly insubstantial, immaterial, or frivolous[.]'" *Id.* (quoting *Boettcher v. Sec'y of Health & Human Serv.*, 759 F.2d 719, 722 (9th Cir. 1985)).

In Foskey's July 19, 2008, letter appealing the ALJ's order dismissing his request for hearing on his third CDB claim, Foskey, at that time acting *pro se*, stated he had never received the denials of his first and second CDB claims. (A.R. 59) He stated he had been "disabled since 1974 as the result of a severe head injury," and according to him, the Agency had been unable to locate a copy of the denial of his second CDB claim. *Id.* In his

12 - FINDINGS & RECOMMENDATION

November 4, 2009, appeal, after he had obtained counsel to represent him, he again requested reopening of his 2000 and 2005 applications, stating he "was not accorded the due process rights allowed to [him] under the U.S. Constitution when these were denied." (A.R. 16)

The Commissioner argues Foskey's claim, first raised in 2008, that he never received notice of the denial of his first two CDB claims, does not establish a colorable constitutional claim that he was denied due process. With regard to Foskey's 2000 claim, the Commissioner argues Foskey has "offered no explanation why he did not pursue the issue of nonreceipt of a notice or a decision for over seven years." Dkt. #19, p. 7. In response, Foskey asserts that he suffered from a mental impairment that prevented him from taking appropriate action when he did not receive notice that his claim had been denied. Foskey asserts that if a claimant can establish good cause for the delay in requesting review, a colorable constitutional claim can be raised at any time, "'regardless of how much time has passed since the prior administrative action[.]'" Dkt. #20, p. 2 (quoting SSR 91-5p, 1991 WL 208067, at *2).

The Social Security Ruling cited by Foskey clarifies the Agency's "policy on establishing good cause for missing the deadline to request review." *Id.*, at *1. Specifically, the Agency policy is to give "proper consideration . . . to a claimant who presents evidence that mental incapacity may have prevented him or her from understanding the review process." *Id.*, at *2. If a *pro se* claimant can show that mental incapacity prevented him from making a timely request for review of "an adverse determination,

13 - FINDINGS & RECOMMENDATION

decision, dismissal, or review by a Federal district court," then
the Agency "will determine whether or not good cause exists for
extending the time to request review." *Id.*  The SSR explains the
criteria for establishing that the time period to request review
should be extended, as follows:

> The claimant will have established mental
> incapacity for the purpose of establishing
> good cause when the evidence establishes that
> he or she lacked the mental capacity to under-
> stand the procedures for requesting review.
>
> In determining whether a claimant lacked the
> mental capacity to understand the procedures
> for requesting review, the adjudicator must
> consider the following factors as they existed
> at the time of the prior administrative
> action:
>
> - inability to read or write;
> - lack of facility with the English lan-
>   guage;
> - limited education;
> - any mental or physical condition which
>   limits the claimant's ability to do
>   things for him/herself.
>
> If the claimant is unrepresented and has one
> of the factors listed above, the adjudicator
> will assist the claimant in obtaining any
> relevant evidence.  The decision as to what
> constitutes mental incapacity must be based on
> all the pertinent facts in a particular case.
> The adjudicator will resolve any reasonable
> doubt in favor of the claimant.

*Id.*

        Although the record indicates Foskey's "composite intelligence
score places him in the superior range of intellectual functioning,
his abilities are highly discrepant." (A.R. 137)  He has marked
difficulties with attention and concentration due to "a thought
disturbance" (A.R. 137), and "significant difficulty in situations
requiring relaxed, somewhat automatic attention[.]" (A.R. 136)  He
is likely to experience "severe concentrational difficulties" in

14 - FINDINGS & RECOMMENDATION

unstructured situations.  *Id.*  The ALJ found that Foskey's mental impairments have met the Listing level of severity since July 9, 1987.  (A.R. 37)

The *Udd* court held, "It is axiomatic that due process requires that a claimant receive meaningful notice and an opportunity to be heard before his claim for disability benefits may be denied." *Udd*, 245 F.3d at 1099 (citing *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976)).  Here, however, the ALJ failed to address the issue of whether Foskey received "meaningful notice and an opportunity to be heard" with regard to his 2000 and 2005 claims.  The Appeals Council declined to reopen Foskey's 2000 claim on procedural grounds.  Thus, no one on behalf of the Agency has addressed Foskey's claim that he never received notice that his 2000 claim was denied - an assertion that is unrebutted by any evidence of record.  The Agency has been unable to locate its own records with regard to the 2000 denial.  In addition, even if he had received notice of the denial, the record indicates he did not possess the mental capacity to seek meaningful review.[7]

The court finds, based on the unrebutted evidence, that Foskey never received notice that his 2000 claim had been denied,

---

[7]The Commissioner also argues Foskey has failed to "explain why he filed a new claim in 2005 if the September 2000 claim was still pending or unresolved."  Dkt. #19, p. 7.  Foskey responds that filing a new application in 2005 was "understandable" when he had not received notice of a ruling on the 2000 application, and "knowing to seek reopening of the 2000 application requires some knowledge of the law and procedure on the issue."  Dkt. #20, p. 2. The court finds the Commissioner's argument to be unavailing under these circumstances.

15 - FINDINGS & RECOMMENDATION

resulting in a denial of due process.  Thus, Foskey has raised a
colorable constitutional claim that constitutes an exception to the
general rule that the Commissioner's decision not to reopen a prior
claim is not subject to judicial review.  Further, the court finds
that even if he had received notice of the denial, Foskey lacked
the mental capacity to understand, and act in accordance with, the
appropriate procedures for requesting timely review of that
decision.  Accordingly, I find that the court has jurisdiction to
consider Foskey's claim.  I further find the evidence of record
establishes that his due process rights were violated when he was
not provided with meaningful notice that his 2000 claim had been
denied.

Ordinarily, when the court determines that a due process
violation requires the reopening of an application for benefits,
the case is remanded to the Commissioner for a ruling on the merits
of the claimant's disability claim for the period in question.  *See
Udd*, 245 F.3d at 1101 (citing *Stieberger v. Apfel*, 1998 WL 556156,
at *11-12 (S.D.N.Y. 1998) (noting the Commissioner is obligated to
give claimant "the benefit of all reasonable doubts"; reversing
refusal to reopen because Commissioner failed to do so)).  Here,
however, the Commissioner has already made the determination that
Foskey became disabled as of July 1987.  This determination was
made in connection with Foskey's third CDB application, which
alleged a disability onset date of May 1, 1973 - the same alleged
onset date listed in Foskey's 2000 application.  (*Compare* A.R. 9 &
18 *with* A.R. 42)  "There is therefore no need for further adminis-
trative adjudication beyond the calculation of benefits[.]"  *Udd*,
245 F.3d at 1102.  The Ninth Circuit has made it clear that "'where

16 - FINDINGS & RECOMMENDATION

the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits.'" *Strauss v. Comm'r*, 635 F.3d 1135, 1138 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)).

Thus, the court having found Foskey's due process rights were violated, the appropriate remedy is remand to the Commissioner with instructions to reopen Foskey's CDB 2000 claim, and to calculate and award appropriate retroactive benefits.[8]

### *CONCLUSION*

I recommend denial of the Commissioner's motion to dismiss. I further recommend reversal of the Appeals Council's refusal to reopen Foskey's 2000 CDB claim, and remand with instructions to the Commissioner to reopen the 2000 claim, and to calculate and award retroactive benefits pursuant to the regulations.

/ / /

/ / /

/ / /

---

[8]The Commissioner explains that if Foskey's 2000 application is reopened, he will be entitled to retroactive CDB from September 15, 1999 (i.e., twelve months prior to his September 15, 2000, application date), through September 2004 (i.e., one month prior to his existing CDB entitlement; *see* 20 C.F.R. § 404.621(a)(1)). Foskey's existing DI benefits of $441.00 per month, and his existing CDB benefits of $656.00 per month, will continue. *See* Dkt. #24, pp. 23-24.

Foskey agrees his retroactive benefits would begin in September 1999, but according to the Commissioner, Foskey's counsel made an error in calculating the exact time period for which Foskey would receive retroactive CDB benefits. *Compare* Dkt. #23, pp. 2-3 *with* Dkt. #24, pp. 2-3.

1

***SCHEDULING ORDER***

2      These Findings and Recommendation will be referred to a
3  district judge.  Objections, if any, are due **September 30, 2011**.
4  If no objections are filed, then the Findings and Recommendation
5  will go under advisement on that date.  If objections are filed,
6  then a response is due by **October 18, 2011**.  When the response is
7  due or filed, whichever date is earlier, the Findings and
8  Recommendation will go under advisement.

9      IT IS SO ORDERED.

10                          Dated this 12th day of September, 2011.

11

12                          /s/ Dennis J. Hubel

13                          _____
                            Dennis James Hubel
14                          Unites States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18 - FINDINGS & RECOMMENDATION